# IN THE COURT OF APPEALS OF IOWA

No. 22-2038
Filed April 26, 2023

**IN THE INTEREST OF L.B., L.B., C.H. and C.B.,**
**Minor Children,**

**L.B., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Lisa A. Allison of Allison Law Firm, LLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan and Lynn Marie Vogan (until withdrawal) of Youth Law Center, Des Moines, attorneys and guardians ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights, contesting the grounds for termination.[1]  We affirm.

L.B. is the mother of C.H., born in 2014; L.B.1, born in 2016; L.B.2, born in 2019; and C.B., born in 2021.  The mother's rights to an older child were terminated in 2012 due to severe and chronic substance abuse, lack of treatment, and inability to care for the child.

In December 2019, L.B.2 was born testing positive for amphetamines, methamphetamine, and THC.  The mother had made no arrangements for C.H. and L.B.1, so they were taken to a youth shelter when the mother went to the hospital to give birth.  C.H., L.B.1, and L.B.2 were removed from the mother's custody and placed in family foster care.[2]  They were adjudicated children in need of assistance (CINA) on February 9, 2020.

Soon after the three children were removed, the mother entered an outpatient substance-abuse program, began a domestic-violence class, and started therapy.  The domestic-violence concerns arose from her relationship with the father of C.H., L.B.2, and C.B.[3]  The mother did not follow through with domestic-violence services until completing a class in November 2020.

---

[1] The fathers of C.H., L.B.1, and L.B.2 had their parental rights terminated in July 2021.  C.B.'s father consented to the termination of his parental rights at the time of the mother's termination hearing.  The fathers did not appeal.

[2] C.H. was removed from the mother's custody for a time in 2015 due to the mother's drug use, domestic abuse, and criminality.  The child was returned to the mother, and the juvenile court case closed shortly after L.B.1's birth in 2016.

[3] The mother became pregnant with C.B. while violating a five-year no-contact order with the father.

Although the mother completed outpatient substance-abuse treatment in July 2020, she relapsed and tested positive for methamphetamine and PCP in August and September. She reengaged with treatment and tested clean over the following months, including when C.B. was born in February 2021. As a result, no request was made for removal or CINA adjudication for C.B. In April, the juvenile court ordered the older three children returned to the mother's care. In July, the court noted the mother's "huge efforts" and progress.

In early November 2021, the mother brought L.B.2 to urgent care. L.B.2 was suffering from second-degree facial burns, swollen eyes, back and chest bruising, multiple hematomas, and occipital bone fractures; a healing clavicle fracture was also detected. The child was transferred to the burn unit at the University of Iowa Hospitals & Clinics. The mother claimed L.B.2 suffered the injuries from falling into hot bath water the night before she brought the child to urgent care; the medical professionals agreed the mother's explanation and timeline did not match the child's injuries.[4]

C.H., L.B.1, and L.B.2 were removed from the mother's custody again and returned to family foster care. After this second removal, C.H. reported the mother "hated" C.H. and L.B.2 and hurt L.B.2. C.B. was removed from the mother's custody and tested positive for methamphetamine exposure when removed. A CINA petition was filed for C.B. The mother tested positive for methamphetamine at the end of December.

---

[4] The child only had burns in a mask-like shape on the face—covering his nose, between his brows, above his mouth, and extending to the side of both cheeks.

In March 2022, the mother tested negative for drugs. The mother completed another substance-abuse evaluation and, based on her self-report of no methamphetamine use since 2019 and continuing outpatient treatment, no treatment was recommended. She missed her scheduled drug screens after March, which were then considered positive.

The juvenile court terminated the mother's parental rights under the 2022 version of Iowa Code section 232.116(1)(d), (g), and (i) (as to all children), and (h) (as to L.B.2 and C.B. only). The court found termination of the mother's parental rights was in the children's best interests and no exception to termination should be applied.

The mother appeals, challenging elements for each ground relating to her ability to respond to services and ability to have the children returned to her custody.

We review proceedings terminating parental rights de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

We normally use a three-step analysis to review termination of parental rights, examining the grounds for termination, the best interests of the children, and if a statutory exception should apply. Iowa Code § 232.116 (establishing parameters for each step of the analysis); *see In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). If any step of the analysis is not disputed, we do not need to discuss it. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). On appeal, the mother only challenges the grounds for termination; she does not offer a best-interests

argument or assert an exception to termination should apply, so we do not address those steps.

When the juvenile court terminates parental rights on multiple grounds, we only need to find termination appropriate under one to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

Under Iowa Code section 232.116(1)(g), the court must find:

> (1) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

In our review, we examine not only parental behavior during these juvenile proceedings, but also in the past to evaluate the parent's ability or willingness to respond to services. *J.H.*, 952 N.W.2d at 166–67 (noting "the juvenile court must specifically examine the parents' past termination cases in deciding whether termination is appropriate").

Here, there is no dispute the first two elements are present: the children were adjudicated CINA in February 2020 (C.H., L.B.1, and L.B.2) and April 2022 (C.B.), and the mother's rights were terminated to an older child in May 2012. The mother contests the third and fourth elements of the court's ruling: "Despite years of services, the mother continues to struggle with substance abuse and unsafe parenting—placing her children in danger. She is unwilling to address these safety concerns."

The mother points to her participation in domestic-violence programming, parenting classes, outpatient substance-abuse treatment, and therapy to support her contention she is willing and able to engage in and respond to services. She reasserts her claim L.B.2's facial burns came from the child accidentally falling into a tub of hot water—downplaying the extent of the injuries. She suggests child-parent psychotherapy is an additional service which could correct the situation. The mother also glosses over C.B.'s November hair stat test, which was positive for methamphetamine, and her own positive hair stat test in December.

It is not the mother's willingness we find lacking. But she appears unable to respond to services in a way that will correct the situation. The mother's history is one of repeated progress and relapse. In the 2012 termination, she minimized her substance abuse and her reported use was inconsistent with her positive drug tests. Another prior CINA case in 2014 for C.H. was initiated after the mother used methamphetamine while caring for the child, though the mother made progress and the case resolved in 2016. But she again gave birth to a child in 2019 who tested positive for illegal substances, followed by relapses after treatment and another removal of all her children when she and a child tested positive for methamphetamine. The mother did appear to make progress in the middle of these CINA proceedings, which the court recognized, granting her a six-month extension and an extended trial visit home in 2021. Unfortunately, the mother's relapse in November 2021 exposed the infant to methamphetamine and coincided with L.B.2 suffering serious facial burns, hematomas, and other injuries unaccounted for by the mother's explanation.

"Children simply cannot wait for responsible parenting." *A.S.,* 906 N.W.2d at 474 (citation omitted). After years of services starting with the first child's removal and including nearly three years for the present CINA proceedings, the mother continues to lack the ability to protect her children from harm. The mother has not demonstrated the ability to sustain sobriety over time. Her minimization of her substance abuse affects the level and efficacy of the services she has received and inhibits her ability to address her problems and correct the situation. We find clear and convincing evidence supports the termination of the mother's parental rights under Iowa Code section 232.116(1)(g), and we affirm.

**AFFIRMED.**